**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

JIMMY RAY BARNETT,

    Petitioner,

v.                                        CASE NO: 08:07-cv-635-T-30MAP

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

    Respondents.
_____/

## ORDER

THIS CAUSE comes before the Court upon Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254 (Dkt. #1), the Government's Response (Dkt. #14) filed in opposition thereto, and Petitioner's Reply (Dkt. #22).

## BACKGROUND

Jimmy Ray Barnett (hereinafter referred to as "Petitioner" or "Barnett") was charged by information with one count of second degree murder for the shooting of Michael Allen. The shooting occurred in the early afternoon on June 29, 2002, at the Chug-a-Lug bar in Tampa, Florida. The victim was shot in the chest and throat. Barnett's trial began on March 24, 2003, and concluded on March 26, 2003.

The state's evidence at trial revealed that Barnett and the victim had known each other for four years prior to the shooting. At around two o'clock on June 29, 2002, Barnett confronted the victim, who was drunk. After exchanging words with him, Barnett exited the

bar and went to the passenger's side of his pickup truck. Opening the unlocked door, Barnett retrieved a loaded .357 revolver from the glove compartment. He then turned and pointed the gun at the victim, who had followed Barnett outside and stood behind him near his car door.

Barnett admitted on the stand that he had enough time to walk away, to retreat, or to get inside his car and close the door. Instead, Barnett grabbed the victim by the shirt collar placing the firearm under the victim's chin. According to witnesses, Barnett angrily made some remark to the victim. Shoving the victim backwards, Barnett fired the gun into the dirt close to the victim's feet. Barnett then raised his gun and shot the victim in the chest and fired again, this time shooting the victim directly in the throat. As the victim died, Barnett called 911, claiming he was attacked and shot the victim in self defense.

On March 26, 2003, the Jury found Barnett guilty as charged. Barnett was adjudicated guilty in accordance with the verdict and sentenced to life in prison. Barnett filed a timely appeal, asserting that the trial court improperly denied his Motion for Mistrial. On April 28, 2004, the state district court per curiam affirmed Barnett's conviction and sentence without written decision. Barnett v. State, 875 So. 2d 599 (Fla. 2d DCA 2004). The district court's mandate was filed on May, 25, 2004. Barnett did not seek rehearing or pursue certiorari review in the United States Supreme Court.

Barnett then filed a pro se petition dated August 11, 2004, alleging his appellate counsel in his direct appeal rendered ineffective assistance. In ground three of that petition, Barnett alleged that his appellate counsel was ineffective in failing to argue that the trial court erroneously instructed the jury on the justifiable use of deadly force. After securing

responses from the state, following each of which Barnett replied, the state district court on March 21, 2005, denied the petition without elaboration. Barnett v. State, 902 So. 2d 141 (Fla. 2nd DCA 2005). Rehearing was denied May 3, 2005.

By then, Barnett had also filed a pro se motion for postconviction relief, pursuant to Florida Rule of Criminal Procedure 3.850, dated September 2, 2004, in which he claimed his trial counsel rendered ineffective assistance. Barnett accused his counsel of failing to convey a plea offer from the state and he faulted his counsel for not requesting a curative instruction on grounds the prosecutor misstated the law during closing remarks. Following the state's response, the postconviction court, by non-final order, summarily denied the second ground and granted an evidentiary hearing on the first claim Evidentiary proceedings were held February 24, 2006, on the outstanding ground. By final order rendered April 13, 2006, the postconviction court denied the ground on which the probe was held. On February 7, 2007, the state district court per curiam affirmed without written decision. Barnett v. State, 949 So. 2d 205 (Fla. 2nd DCA 2007). The mandate was issued February 28, 2007.

Barnett timely filed the instant pro se §2254 petition on March 27, 2007.

## AEDPA STANDARD OF REVIEW

The standard of review in a federal habeas corpus proceeding is quite strict, resulting in a very heavy burden on the petitioner to successfully overturn a state court conviction. Since Petitioner's conviction was entered after the enactment of the Antiterrorism and

Effective Death Penalty Act ("AEDPA") effective April 24, 1996.[1], see Lindh v. Murphy, 521 U.S. 320, 336 (1997), his petition is subject to the provisions thereof. Pursuant to 28 U.S.C. § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) - (2)

Thus, the AEDPA "establishes a more deferential standard of review of state habeas judgments," Fugate v. Head, 261 F.3d 1206, 1214 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002); see also, Bell v. Cone, 543 U.S. 447, 455 (2005) (habeas court's standard for evaluating state court ruling is highly deferential, which demands that state-court decisions be given the benefit of the doubt) [citing 28 U.S.C.A. § 2254(d)]. The Supreme Court analyzed the application of this standard of review in Williams v. Taylor, 529 U.S. 362, 412 (2000).[2]

---

[1] The AEDPA imposes a one-year statute of limitations on all habeas corpus petitions. See 28 U.S.C. § 2244(d)(1).

[2] The interpretation of amended §2254(d) was decided in Part II of Williams and the Court quotes from Justice O'Connor's opinion.

In Williams, the Supreme Court held that "§ 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." Id. First, the federal court evaluating a habeas petition under § 2254(d)(1) must determine the applicable "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). This law can be found in "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412.

Next, the court must determine whether one of the two conditions set forth in §2254(d) applies. In Williams, the Supreme Court held that "[u]nder the 'contrary to' clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 405-06; see also Brown v. Payton, 125 S.Ct. 1432, 1438 (2005). A state court does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent. Early v. Packer, 537 U.S. 3, 8 (2002); Parker v. Sec'y of Dep't of Corr., 331 F.3d 764, 775-76 (11th Cir. 2003). Where no Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said that the state court's conclusion is contrary to clearly established governing federal law. See Mitchell v. Esparza, 540 U.S. 12, 17 (2003); Clark v. Crosby, 335 F.3d 1303, 1308-10 (11th Cir. 2003). Where, as here, the state court's application of governing federal law is challenged, it must be shown

to be not only erroneous, but objectively unreasonable. Yarborough v. Gentry, 124 S.Ct. 1, 4 (2003), Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (per curiam); Williams, 529 U.S. at 409.

An objectively unreasonable application of clearly established Supreme Court precedent occurs when (1) a state court identifies the correct legal rule but unreasonably applies it to the facts or (2) a state court either unreasonably extends a legal principle from precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1141 (11th Cir. 2005). The determination of unreasonableness is an objective one and the federal court may not issue a writ of habeas corpus simply because it concludes, in its independent judgment, that the state court decision was erroneous or incorrect. Williams, 529 U.S. at 410-11. It is the habeas applicant's burden to show the state court applied that case to the facts of his case in an objectively unreasonable manner. Price v. Vincent, 538 U.S. 634, 641 (2003).

Under the unreasonable application standard, a state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Henderson v. Haley, 353 F.3d 880, 890-91 (11th Cir. 2003). This statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact. McBride v. Sharpe, 25 F.3d 962, 971 (11th Cir. 1994). Congress, in passing the AEDPA, also erected additional barriers limiting a habeas

petitioner's right to discovery or an evidentiary hearing. Crawford v. Head, 311 F.3d 1288, 1328-1329 (11th Cir. 2002); see also 28 U.S.C. §2254(e)(2).[3]

## **INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS**

The Sixth Amendment to the United States Constitution provides the right of the accused to have effective assistance of counsel for his defense. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one. See Osborne v. Terry, 466 F.3d 1298, 1305 (11th Cir. 2006). "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc). It is well established that to prevail on an ineffective assistance claim, the accused must satisfy the two-prong inquiry of Strickland v Washington, 466 U.S. 668, 687 (1984).

First, Petitioner must demonstrate that his attorney's performance was deficient, meaning that "counsel made errors so serious that counsel was not functioning as the

---

[3] § 2254(e)(2) provides:
If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the
applicant shows that—
(A) the claim relies on—
    (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
    (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. The Supreme Court has interpreted § 2254(e)(2) to mean that a petitioner who "failed to develop" the factual basis for a claim while in state court as a result of the petitioner's lack of diligence is barred from doing so in federal court (subject to the very narrow exceptions set out in § 2254(e)(2)). Williams v. Taylor, 529 U.S. at 433-34.

'counsel' guaranteed to the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

In order to establish deficient performance, the petitioner must show that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000)(citations omitted). The court's review of counsel's performance should focus on "not what is possible or what is prudent or appropriate, but only [on] what is constitutionally compelled." Id. at 1313. There are no absolute rules dictating what is reasonable performance because absolute rules would restrict the wide latitude counsel have in making tactical decisions. See Id. at 1317.

The test for ineffectiveness is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. Id. at 1313. Instead the test is . . . whether what they did was within the "wide range of reasonable professional assistance." Id. at n.12. The court's review of counsel's performance must be highly deferential, and the court must avoid second-guessing counsel's performance. See Strickland, 466 U.S. at 689. For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take." Chandler, 218 F.3d at 1316.

Second, Petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

If Petitioner fails to establish either deficient performance or prejudice, the court need not address the other prong. Id. at 697 ("There is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."); see also Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998). The standards of effective assistance set forth in Strickland apply to appellate counsel, as well as to trial counsel. Matire v. Wainwright, 811 F.2d 1430, 1435 (11th Cir. 1987).

## DISCUSSION

Petitioner raises the following grounds in support of his petition:

**Ground One**: Appellate counsel was ineffective for failing to argue that the trial court abused its discretion in admitting certain testimony evidence from Steven Allen and Johnny Robinson because under Fla. Stat. §90.403, the probative value of the evidence was substantially outweighed by the danger of unfair prejudice.

**Ground Two**: Appellate counsel was ineffective for failing to argue that the trial court erred in denying his motion for judgment of acquittal and for failing to argue that the trial court erred in denying his motion for a directed verdict of manslaughter because the State failed to establish that Barnett acted out of ill will, hatred, spite, or an evil intent.

**Ground Three**: Appellate counsel was ineffective for failing to argue that the trial court committed fundamental error in giving the forcible felony exception to the standard self-defense jury instruction in a case where there was no independent forcible felony charged.

**Ground Four**: Appellate counsel was ineffective for failing to argue that the trial court erred in denying his motion for access to jurors and his motion for a new trial based on impermissible contact of the jury with a member of the victim's family during trial. Barnett further asserts that appellate

> counsel was ineffective for failure to perfect the record on appeal in this case to include the affidavit of Ms. Alexander, who informed defense counsel of the improper jury contact, and the transcripts of the hearings held by the trial court, wherein the motion for access to jurors was heard and denied, where such records were essential for a proper and complete review of this issue on direct appellate review.

In Petitioner's Reply to the Government's Response, Petitioner advances Ground Three only and withdraws Grounds One, Two, and Four. This Court grants Petitioner's withdrawal of Grounds One, Two, and Four and will decide only Ground Three.

**GROUND THREE**:

In support of Ground Three, Petitioner asserts that his appellate counsel was ineffective for failing to argue on direct appeal that the trial court committed fundamental error in giving the forcible felony exception, (Fla. Stat. 776.041 (2002)), to the standard self-defense jury instruction, (Fla. Std. Jury Instr. (Crim.) 3.6(f) (2002)), in a case where Petitioner was only charged with second-degree murder and in which his sole defense for all acts of the charge was self-defense. See Davis v. State, 804 So. 2d 400, 404 (Fla. 4th DCA 2001)(recognizing that it is fundamental error to give an inaccurate and misleading instruction where the effect of that instruction is to negate a defendant's only defense); Harris v. State, 570 So. 2d 397, 399 (Fla. 3d DCA 1990)(recognizing it to be fundamental that trial court should give a complete and accurate instruction so as not to negate the defendant's theory of defense). According to Petitioner, the forcible felony instruction was confusing and misleading to the jury, and thus, vitiated his defense.

In Petitioner's case, the forcible felony instruction was based on Fla. Stat. §776.041, which provides, in relevant part,:

> (Use of force by aggressor) - The justification described in the preceding sections of this chapter is not available to a person who:
> (1) Is attempting to commit, committing, or escaping after the commission of, a forcible felony; or
> (2) Initially provokes the use of force against himself or herself, . . .

Fla. Stat. § 776.08 defines "forcible felony" to mean:

> treason; murder; manslaughter; sexual battery; carjacking; home-invasion robbery; robbery; burglary; arson; kidnapping; aggravated assault; aggravated battery; aggravated stalking; aircraft piracy; unlawful throwing, placing, or discharging of a destructive device or bomb; and any other felony which involves the use or threat of physical force or violence against any individual.

The forcible felony instruction given during Petitioner's trial reads in pertinent part:

> . . . the use of force likely to cause death or great bodily harm is not justifiable if you find that Jimmy Barnett was attempting to commit, committing, or escaping after the commission of aggravated assault, or Jimmy Barnett initially provoked the use of force against himself . . .

(Rcd. 838, L.6-12).

Petitioner contends that the forcible felony instruction is only applicable when the accused is charged with at least two criminal acts, the act for which the accused is claiming self-defense, as well as a separate forcible felony. He argues that because he was charged with only a single forcible felony (i.e. second degree murder) and because no additional separate forcible felony was charged, the giving of the instruction essentially negated Petitioner's claim of self-defense.

According to Petitioner, his appellate counsel was aware of this issue both because his trial counsel objected to this instruction, (Rcd. at 771-73), and in light of cases in the Florida DCA between 2002 and 2006 reversing convictions related to this issue. See Zuniga v. State, 869 So. 2d 1239 (Fla. 2d DCA 2004); Giles v. State, 831 So. 2d 1263 (Fla. 4th DCA 2002). Petitioner relies on these cases to demonstrate ineffective assistance of counsel under Strickland's two-prong standard.

Petitioner relies on Giles to argue that his appellate counsel's deficiency resulted in prejudice under Strickland. The facts of Giles are as follows.

> Giles and the victim, Leon White, were engaged in a poker game when White became frustrated, stood up, and threw his cards in towards Giles. Giles stood up and struck White in the eye. After a brief struggle, they went outside and continued arguing. White picked up a beer bottle and threw it, but did not hit Giles. A witness then saw Giles go down the street and pick up a brick. White's cousin attempted to stand in between the two, but Giles swung around her and hit White in the mouth with the brick.
>
> At the charge conference, it was agreed that the jury would be instructed on both the defenses of justifiable use of deadly and non-deadly force. Over defense objection, the trial court included an instruction that read:
>
> The use of force not likely to cause death or great bodily harm is not justifiable if you find that the defendant was attempting to commit, committing or escaping after the commission of an aggravated battery.

(Giles v. State, 831 So. 2d 1263, 1264 (Fla. Dist. Court. App. 4th Dist. 2002))

The Giles court found, in pertinent part, that:

> . . . the plain language of section 776.041 indicates that it is applicable only under circumstances where the person claiming self-defense is engaged in

another, independent "forcible felony" at the time. See Perkins v. State, 576 So. 2d 1310 (Fla. 1991)(holding that cocaine trafficking was not forcible felony so as to preclude defense of self-defense when killing occurred during attempt to traffic in cocaine). This case was not one where the alleged aggravated battery occurred while Giles was attempting to commit, committing, or escaping after the commission of some other independent forcible felony. The instruction is normally given in situations where the accused is charged with at least two criminal acts, the act for which the accused is claiming self-defense and a separate forcible felony. See Marshall v. State, 604 So. 2d 799 (Fla. 1992)(holding that section 776.041 jury instruction was proper on claim of self-defense to charge of felony murder where underlying felonies were burglary and aggravated battery); cf. Perkins, 576 So. 2d 1310 at 1311. Here, by contrast, Giles committed only one act, the alleged aggravated battery.

The instruction given improperly told the jury that the very act Giles sought to justify itself precluded a finding of justification. Essentially, the jury was instructed that 776.041(1) would apply to preclude a self-defense claim, when it is claimed that the acts with which the defendant is charged are themselves committed in appropriate self-defense. Thus, even if the jury found that Giles' act of aggravated battery was committed in self-defense, then the use of force was not justifiable because the act itself is a forcible felony. This reading, however, is erroneous because the proper test for determining the applicability of the instruction is not whether the self-defense act itself could qualify as a forcible felony, but whether, at the time of the self-defense, the accused was engaged in a separate forcible felonious act. See Perkins, 576 So. 2d at 1311. Here, Giles was not engaged in a separate felonious act at the time of the alleged aggravated battery and so the instruction was inapplicable. At the very least, the instruction given was circular and confusing to the jury such that it basically negated Giles' defense. See Davis, 804 So. 2d at 404; Wadman, 750 So. 2d at 658.

. . . .

(Giles v. State, 831 So. 2d 1263, 1265-66 (Fla. Dist. Court. App. 4th Dist. 2002))

For two reasons, the Giles case is not applicable to the instant case. First, in Giles, the Fourth District held that in cases where the only crime charged is aggravated battery, it is error to give an instruction that the use of force not likely to cause death or great bodily

harm is not justifiable if the jury finds the defendant was attempting to commit, committing or escaping after the commission of the aggravated battery. However, in the instant case, Petitioner was charged with Second Degree Murder and the jury was instructed that the use of force likely to cause death or great bodily harm is not justifiable if the jury finds the defendant was attempting to commit, committing or escaping after the commission of an aggravated battery. Thus, unlike in Giles, the instruction referred to a separate, independent "forcible felony" at the time of the fatal shooting.

During trial, Petitioner testified that he: raised the gun under [Mr. Allen's] chin and grabbed him by his shirt collar, (Rcd. at 710), shoved [Mr. Allen] . . . a couple of feet, (Rcd. at 711), raised the gun a little bit and shot a warning shot into the ground by [Mr. Allen's] feet to scare him, (Rcd. at 712), had time to get in his car and close the door but did not, (Rcd. at 736-37), and could have retreated back to the bar but decided not to do so. (Rcd. at 738). Petitioner also testified that Mr. Allen did not have a weapon, (Rcd. at 722-23) and had not laid a hand on him. (Rcd. at 734). Based on these facts, a reasonable court and a reasonable jury could conclude that Petitioner was engaged in a separate forcible felony (i.e. aggravated assault or aggravated battery), independent from the fatal gun shots (i.e. second degree murder charge) allegedly made in self defense, when he stuck a loaded gun under the victim's chin or when Petitioner shot a warning shot into the ground at the victim's feet.

Second, although the Giles Court found that Fla. Stat. § 776.041 is "normally given in situations where the accused is charged with at least two criminal acts, the act for which the accused is claiming self-defense and a separate forcible felony", the word 'normally'

implies that there are situations where a defendant is charged with only one crime and the instruction under §776.041 is still proper. As stated in Giles, the key issue in determining whether to give the instruction is whether the person claiming self defense was, at the time, engaged in a separate forcible felony - not whether the state actually charged the separate offense. In this case, the forcible felony, (i.e. aggravated assault or aggravated battery) was separate and independent from the crime charged (i.e. second degree murder), but was not itself charged.

Petitioner further claims that Fla. Stat. § 776.041(1) "does not apply when it is claimed that the acts with which the defendant is charged are themselves committed in appropriate self defense." McGahee v. State, 600 So. 2d 9, 11 (Fla. 3d DCA 1992). However, Petitioner's own testimony that Mr. Allen had no weapon, that Mr. Allen did not lay a hand on Petitioner, that Petitioner could have retreated to his car and closed the door, and that Petitioner could have retreated to the bar, all support the conclusion that Petitioner's actions were not committed in appropriate self-defense.

Petitioner also relies on Zuniga to argue that his appellate counsel was deficient under Strickland. In Zuniga, the court found in pertinent part:

> We agree with the Fourth District's analysis in Giles. Although Zuniga did not raise this issue at trial, we conclude that the erroneous instruction was fundamental error in this case. The only disputed issue at trial was whether Zuniga acted in self-defense. In Reed v. State, 837 So. 2d 366 (Fla. 2002), the court addressed whether an erroneous instruction defining an element of an offense was fundamental error and held that the issue turned on whether the element was disputed at trial." The self-defense instruction can be likened to an element of the offense for its importance to the defendant. See Motley v. State, 155 Fla. 545, 20 So. 2d 798 (Fla. 1945) (reversing for a new trial based

> on an erroneous self-defense instruction). Therefore, applying Reed, because the erroneous instruction was relevant to the disputed issue at trial, we conclude that the error was fundamental.

Zuniga v. State, 869 So. 2d 1239, 1240 (Fla. Dist. Court. App. 2d Dist. 2004)

However, as mentioned above, Petitioner admitted to raising a loaded gun under Mr. Allen's chin and firing a warning shot into the ground near Mr. Allen's feet. Since Petitioner admitted to engaging in this conduct and these facts were not disputed at trial, there was no error, fundamental or otherwise, in giving the instruction.

Petitioner also cites to In Re Standard Jury Instructions in Criminal Cases (No. 2005-4), 930 So. 2d 612 (Fla. 2006), presumably to argue that the Florida Supreme Court removed the word 'normally' and just stated, "[g]ive [Fla. Stat. §776.041] only if the defendant is charged with more than one forcible felony. See Giles v. State, 831 So. 2d 1263 (Fla. 4th DCA 2002)." However, the Supreme Court citation reads "See Giles v. State, 831 So. 2d 1263 (Fla. 4th DCA 2002)" which requires inquiry into the specific language of the case. Therefore, it was not the intent of the Florida Supreme Court to prohibit an analysis of the reasoning in Giles.

Petitioner has argued that the giving of this instruction was improper under state law. The state courts concluded otherwise. "State courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters." See Agan v. Vaughn, 119 F.3d 1538, 1549 (11th Cir. 1997). Petitioner cites to no federal law or constitutional right he claims was violated by this instruction. Petitioner fails to demonstrate that the state court's ruling resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

THEREFORE, based on the foregoing arguments and authorities, the instant petition will be denied. However, because reasonable jurists might disagree and because "forcible felony" as used in Fla. Stat. §776.041, includes a charge of second degree murder, (see Fla. Stat. §776.08), if requested by Petitioner, this Court will issue a Certificate of Appealability to the Eleventh Circuit Court of Appeals.

It is therefore ORDERED AND ADJUDGED that:

1. Petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. §2254 (Dkt. #1) is DENIED.

2. The Clerk is to enter judgment for Respondents, terminate any pending motions, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on March 20, 2009.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2007\07-cv-635.deny 2254.wpd